UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――

COLLEEN M. MCAULIFFE,

              Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.

―――――――――――――――――――――――――

**REPORT AND
RECOMMENDATION**

09-CV-1428
(FJS/VEB)

## I. INTRODUCTION

In November of 2000, Plaintiff Colleen M. McAuliffe applied for Supplemental Security Income ("SSI" )benefits and disability insurance benefits ("DIB") under the Social Security Act.  Plaintiff alleges that she has been unable to work since February of 2000 due to various physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications.  Plaintiff, through her attorneys, Legal Services of Central New York, Christopher Cadin, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On September 3, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits on November 21, 2000, alleging disability beginning February 28, 2000.  (T at 40, 192-94, 835-37).[1]  The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on March 26, 2002, before ALJ Joseph Medicis.  (T at 1053-84).  On May 16, 2002, ALJ Medicis issued a decision denying Plaintiff's applications.  (T at 46-56).  The Appeals Council reviewed and remanded the case for further proceedings on October 7, 2003.  (T at 132-34).

Pursuant to the remand order, ALJ Medicis conducted a further hearing on April 27, 2004.  (T at 1004-1052).  On August 25, 2004, ALJ Medicis issued a second decision denying Plaintiff's applications.  (T at 57-69).  In December of 2004, Plaintiff filed another application for benefits and was denied.  (T at 76-78, 218-23; 884-47).  On April 19, 2005, the Appeals Council directed that Plaintiff's case be assigned to a different ALJ.  (T at 162-64).  In addition, the Appeals Council associated Plaintiff's 2000 and 2004 applications and remanded the case for a consolidated decision on the associated applications.  (T at 162-64).

The case was assigned to ALJ Franklin Russell, who conducted hearings on June 23, 2005 (T at 966-1003) and October 20, 2005 (T at 949-65).  ALJ Russell retired before issuing a decision and the matter was reassigned to ALJ Robert E. Gale, who conducted a further hearing on September 11, 2007.  (T at 896-948).

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 6).

On June 6, 2008, ALJ Gale issued a decision denying Plaintiff's applications. (T at 21-33).  ALJ Gale's decision became the Commissioner's final decision on October 30, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 11-13).

Plaintiff, through counsel, commenced this action on December 23, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  The Commissioner interposed an Answer on April 8, 2010. (Docket No. 8).  Plaintiff filed a supporting Brief on May 24, 2010. (Docket No. 10).  The Commissioner filed a Brief in opposition on August 6, 2010. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for calculation of benefits.


## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987)

("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d

4

119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.      Analysis**

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

### 1.      Commissioner's Decision

ALJ Gale found that Plaintiff met the insured status requirements of the Act through December 31, 2010. (T at 23).  The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since November 21, 2000, the alleged onset date. (T at 24). He further determined that Plaintiff had the following medically determinable impairments considered "severe" under the Social Security Act: bipolar disorder, personality disorder, polysubstance abuse, and bilateral knee arthritis. (T at 24).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 26).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift/carry 25 pounds occasionally and 10 pounds frequently, stand/walk 6 hours in an 8 hour day with a change of posture hourly, sit without limitation, push/pull without limitation, perform no kneeling, climbing ladders/scaffolds, and crawl only occasionally. He further found that Plaintiff could understand, remember, and carry out simple tasks and some complex tasks both independently and with supervision, maintain attention and concentration for simple tasks, attend to a routine, maintain a schedule, and make appropriate decisions.  The ALJ indicated that Plaintiff should avoid prolonged exposure to fumes, dusts, odors, and pulmonary irritants, as well as temperature extremes and humidity and wetness. (T at 27).

The ALJ found that Plaintiff was capable of performing all of her past relevant work, except for her work as a production machine tender. (T at 32).  Thus, the ALJ concluded that Plaintiff was not under a disability, as that term is defined under the Social Security

Act, from the alleged onset date through the date of decision. (T at 32).  As noted above, ALJ Gale's decision became the Commissioner's final decision on October 30, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 11-13).

### 2.      Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  She offers three (3) principal arguments.  First, Plaintiff contends that the ALJ did not give proper consideration to the medical evidence.  Second, Plaintiff argues that the ALJ's RFC determination was flawed.  Third, Plaintiff asserts that the ALJ did not properly evaluate her credibility.  This Court will address each argument in turn.

### a.      Consideration of Medical Evidence

In his decision, ALJ Gale assigned little weight to several treating sources, gave considerable weight to one treating source, and afforded little weight to the assessment of a consultative examiner.  Plaintiff argues that the ALJ did not properly evaluate this medical evidence.  A summary of each source's assessment, along with the weight assigned by the ALJ, is as follows:

### i.      Dr. Slivinski

In an undated letter, Dr. Anthony Slivinski, one of Plaintiff's treating providers, opined that Plaintiff suffered from mood disorder and that the disorder would exist even if Plaintiff was able to overcome her substance abuse problem. (T at 463).  He indicated that the disability would "most probably" endure for more than a year, but that it had been demonstrated to be responsive to anti-depressants and individual psychotherapy. (T at 464).  Dr. Slivinski also testified at one of the administrative hearings, opining that Plaintiff

would be "sensitive to criticism," but would "probably get along okay with co-workers." (T at 1039).  He indicated that Plaintiff could "keep up" and be "able to develop a working relationship." (T at 1039).  Dr. Slivinski assessed that Plaintiff "definitely" would have difficulty maintaining concentration "from time to time" due to anxiety.  (T at 1039).  He indicated that she would also have "some impairment of recent memory." (T at 1040).  He also opined that Plaintiff would have fairly significant difficulty reacting to changes in environment and/or routine. (T at 1040).

The ALJ afforded "little weight" to Dr. Slivinski's assessment, noting that Dr. Slivinski had indicated that Plaintiff showed improvement with anti-depressants and psychotherapy. (T at 28-29).  The ALJ appears to have discounted Dr. Slivinski's opinion primarily because the ALJ believed Dr. Slivinski had not indicated "any functional limitations." (T at 29).  As discussed further below, this finding was not consistent with the record. The finding focuses only on the doctor's undated letter, without accounting for his hearing testimony, in which he did indicate functional limitations with regard to maintaining concentration and responding to changes in environment and routine. (T at 1039-40).

### ii.    Dr. Shayevitz

Dr. Myra Shayevitz performed a consultative examination in February of 2005.  Dr. Shayevitz opined that Plaintiff would have "difficulty" with "very prolonged" periods of sitting, standing, or walking; and with heavy repetitive lifting. (T at 694).  The ALJ found this assessment inconsistent with Dr. Shayevitz's clinical examination, which the ALJ described as "essentially benign," and thus accorded Dr. Shayevitz's overall assessment little weight. (T at 30).

### iii.    Ms. King

8

In March of 2005, Martha King, Plaintiff's treating social worker, completed a Mental Impairment Questionnaire (RFC & Listings) form, in which she made the following findings: Plaintiff experienced poor memory, perceptual disturbances, emotional lability, social withdrawal or isolation, substance dependence, generalized persistent anxiety, and feelings of guilt/worthlessness.  (T at 589-90).

With regard to Plaintiff's functional capacity, Ms. King opined that Plaintiff had "good" ability to remember work-like procedures, "fair" ability to understand and remember very short and simple instructions, "good" ability to carry out very short and simple instructions, "fair" ability to maintain attention for two hour segments, "fair" ability to maintain regular attendance and be punctual within customary, usually strict tolerances, "fair" ability to sustain an ordinary routine without special supervision, and rated Plaintiff's ability to work in coordination with or proximity to others without being unduly distracted as "poor to none." (T at 592).

Ms. King indicated that Plaintiff had poor to no ability to ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and deal with normal work stress. (T at 593).  She further opined that Plaintiff would have poor to no ability to understand, remember, or carry out detailed instructions and poor to no ability to deal with the stress of semiskilled or skilled work. (T at 593).  Ms. King noted "moderate" restrictions in activities of daily living and "moderate" difficulties in maintaining social functioning. (T at 594).  She indicated that Plaintiff would "often" experience deficiencies of concentration, persistence, or pace, resulting in failure to complete tasks in a timely manner and "continual" episodes of deterioration or decompensation in work or work-like settings. (T at 594).  Ms. King's final conclusion was

9

that Plaintiff would need to stabilize and undergo lengthy and intensive counseling during a period of sobriety in order to become suitable for employment. (T at 595).

The ALJ noted that Ms. King was not an "acceptable medical source" under the Regulations and afforded her opinion "little weight." (T at 32).  The ALJ also indicated that Ms. King's findings were not necessarily inconsistent with the ability to perform unskilled work involving simple tasks. (T at 29-30).

### iv.   Dr. Federico

In August of 2005, Dr. Carmen Federico, a treating physician, opined that Plaintiff would "not have difficulty with prolonged hours of sitting" and indicated that Plaintiff's "ability to stand and walk are not significantly limited." (T at 759).  Dr. Federico did indicate that any heavy repetitive lifting would be difficult. (T at 759).

In a July 2005 report, Dr. Federico assessed that Plaintiff's psychiatric medications "seem[ed] to be helping." (T at 760).  Knee x-rays were noted to be "unremarkable." (T at 760).  Dr. Federico further opined that Plaintiff could lift 20-25 pounds occasionally and 10 pounds frequently, noting that Plaintiff had "been known" to lift lighter grocery bags and small children. (T at 760).  Six hours in a workday of standing/walking with normal breaks "could probably be obtained." (T at 760).  Dr. Federico found no limitations as to sitting and no communicative or manipulative limitations. (T at 760).  The doctor noted a "sense" that Plaintiff "could probably do more than she says she can do." (T at 761).

The ALJ gave Dr. Federico's opinions "considerable weight" because the doctor was Plaintiff's treating physician and provided a functional assessment. (T at 32).

### v.   Dr. Kahn

10

In May of 2005, Dr. Muslim Kahn, a treating psychiatrist, completed a Psychiatric Report (Employment) form, in which he recommended that Plaintiff not work amid noise, at a high rate of speed, or with or around people. (T at 758).  He further indicated that Plaintiff should not have responsibility for others or for decisions. (T at 758).  Dr. Kahn recommended that Plaintiff work alone, during the day, and perform routine work. (T at 758).  He opined that Plaintiff would "do well" in a quiet setting, with routine work that involved limited interaction with others, and indicated that part-time work would be "beneficial." (T at 758).

Dr. Kahn also co-signed a letter dated June 9, 2005, with Ms. King (the treating therapist) in which he opined that Plaintiff would still have a diagnosis of Social Phobia, Bipolar Disorder, and Personality Disorder NOS even without her use of illicit drugs. (T at 604).  In December of 2005, Dr. Kahn indicated that Plaintiff was not capable of working in any capacity at that time, but declined to support this conclusion with any specific findings. (T at 825).  Dr. Kahn repeated this assessment (again without supporting findings) in February and March of 2006. (T at 826-27).

The ALJ gave Dr. Kahn's opinions "little weight," noting that the opinions were "contradictory." (T at 32).  He also concluded that Dr. Khan's indication in May of 2005 that part-time work would be beneficial suggested that Plaintiff had some ability to perform work. (T at 32).

### vi.    Dr. Noia

Dr. Dennis Noia performed a consultative psychiatric examination in February of 2005.  Dr. Noia opined that Plaintiff appeared capable of understanding and following

11

simple instructions and directions. (T at 689). He indicated that she could perform simple and complex tasks with supervision and independently. (T at 689). Dr. Noia opined that Plaintiff could maintain attention and concentration for tasks, learn new tasks, make appropriate decisions, and relate to and interact appropriately with others. (T at 689). He did, however, note that Plaintiff's "medical problems" would prevent her from attending to a routine and maintaining a schedule on a consistent basis and that Plaintiff appeared to have "some difficulty dealing with stress." (T at 689). Dr. Noia indicated that Plaintiff's vocational difficulties were primarily medical and were affected only "secondarily by psychiatric symptoms." (T at 689). Although the ALJ referenced Dr. Noia's report, he did not assign it any specific weight. (T at 32).

### vii.    ALJ's Application of Treating Physician Rule.

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[3]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length

---

[3]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

Plaintiff's challenge to the ALJ's decision focuses on the ALJ's evaluation of evidence concerning her mental impairments.  Plaintiff does not articulate (and this Court does not find) any reversible error with regard to the ALJ's decision to afford controlling weight to Dr. Federico's assessment of Plaintiff's physical limitations.  However, this Court does find several errors with regard to the ALJ's consideration of the evidence concerning Plaintiff's mental impairments.

First, when evaluating the assessment of Dr. Anthony T. Slivinski, a treating physician, the ALJ stated that Dr. Slivinski "did not indicate any functional limitations" and "[t]herefore, his opinion [was] given little weight." (T at 29)  However, as noted above, the ALJ's discussion references only a letter submitted by Dr. Slivinski (T at 463-64) and contains no apparent consideration of Dr. Slivinski's hearing testimony, in which he did discuss functional limitations.

Dr. Slivinski testified that he had been in practice since 1957, with a concentration in general psychiatry. (T at 1026)  At the time of his testimony in April of 2004, Dr. Slivinski had been treating Plaintiff for more than three years. (T at 1034)  He testified that although Plaintiff could "keep up" and develop a working relationship with co-workers, she would "definitely" have difficulty maintaining concentration on a daily basis. (T at 1039-40)  Dr.

13

Slivinski also opined that Plaintiff would have significant difficulty reacting to environmental changes or changes in her routine. (T at 1040). The ALJ's assessment of Dr. Slivinski's opinion is flawed because it takes no apparent account of this testimony, which (contrary to the ALJ's discussion) does indicate functional limitations.

Second, Dr. Khan, another treating physician, opined on several occasions in late 2005 and early 2006 that Plaintiff was not capable of working in any capacity. (T at 825-27). The ALJ discounted this assessment on the grounds that it was contradicted by a May 2005 assessment in which Dr. Kahn opined that part-time work might be beneficial to Plaintiff. (T at 32). The ALJ also indicated that Dr. Kahn's reference to part-time work being "beneficial" suggested that Plaintiff had "some ability to work." (T at 32).

As a threshold matter, before discounting Dr. Kahn's assessments as "contradictory," the ALJ was obliged to re-contact the provider and give him an opportunity to explain the apparent inconsistency.  The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also  20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved ...."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

Moreover, Dr. Khan's indication that part-time work might be beneficial, when read

14

in context, does not suggest that Plaintiff has any meaningful ability to perform the basic mental requirements of competitive remunerative unskilled work, which "include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.  Dr. Kahn recommended that Plaintiff work alone in a "quiet setting" with routine work and "set hours." (T at 758).  He indicated that Plaintiff could not have responsibility for others and noted concerns about her reliability for continued effort and ability to work around and with people. (T at 758).  Contrary to the ALJ's conclusion, Dr. Kahn's suggestion that part-time work under such limited circumstances might be "beneficial" did not indicate that Plaintiff has the ability to perform competitive remunerative unskilled work.  In fact, read in context, Dr. Kahn's findings are to the contrary.

In addition, the ALJ discounted an undated assessment from Dr. Kahn, in which the doctor opined that Plaintiff had marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration. (T at 597).  The ALJ noted that it was "not clear" how the doctor arrived at these conclusions, but indicated that it appeared that his source was Plaintiff's own reports.  (T at 29).  To the extent the ALJ discounted this assessment based upon the former ground, he erred by failing to re-contact Dr. Khan to address any arguable lack of clarity concerning the basis of his opinion.  To the extent the assessment was discounted on the latter ground, this was also error.  The Second Circuit has held that a patient's complaints or reports of her history are "an essential diagnostic tool." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir.2008) (quoting Green-Younger v.

15

Barnhart, 335 F.3d 99, 107 (2d Cir.2003)) (referring to "a patient's report of complaints, or history, as an essential diagnostic tool.").

Third, the ALJ was improperly dismissive of the assessment of Ms. King, a social worker and treating therapist.  The ALJ largely dismissed Ms. King's findings because, as a social worker, she cannot give a "medical opinion", as defined under the Social Security Act.  (T at 32).  In this limited respect, the ALJ was correct – a social worker's opinion is not considered a "medical opinion" under the Act.  See Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir.1995); Corson v. Astrue, 601 F. Supp.2d 515, 531-32 (W.D.N.Y. 2009).

The Social Security Regulations provide that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of ... impairment(s)...." Diaz, 59 F.3d at 313 (citing 20 C.F.R. § 404.1527(a)(2)).  Section 404.1513(a) lists five categories of "acceptable medical sources," none of which mentions therapists or social workers.  Rather, therapists and social welfare agency personnel are expressly listed in a separate section, under "other sources" whose "[i]nformation ... may ... help us to understand how [the] impairment affects your ability to work." Id. (citing 20 C.F.R. § 404.1513(e) (1994)).

Thus, the ALJ was not free to simply disregard Ms. King's assessment on the basis that she was not an acceptable medical source alone.  While opinions from therapists and social workers are not considered "acceptable medical sources," such opinions are nevertheless "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p; see also White v. Comm'r, 302 F.Supp.2d 170, 174-76 (W.D.N.Y.2004) (reversing where the ALJ failed to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and

16

whose diagnosis was consistent with the treating psychiatrist); Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); Allen v. Astrue, 05-CV-0101, 2008 WL 660510, at *9 (N.D.N.Y. Mar.10, 2008) (remanding because ALJ did not evaluate the treating therapist's opinion); Bergman v. Sullivan, No. 88-CV-513, 1989 WL 280264, *3 (W.D.N.Y. Aug. 7, 1989) (holding that treating social worker is "a non-medical source whose opinion concerning the nature and degree of plaintiff's impairment is not only helpful, but critically important, since he is the only treating source").

Indeed, "[b]ased on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a non-acceptable medical source than a treating physician." Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug, 28, 2009).

This Court is mindful of the fact that the Second Circuit has stated that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him."  Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir.1995). However, it was an abuse of that discretion for the ALJ in this case to reject Ms. King's assessment purely on the grounds that she is a social worker.

Moreover, the ALJ made serious errors in his discussion and characterization of Ms. King's findings.  For example, the ALJ concluded that the limitations assessed by Ms. King did not "impact basic work activities which is all that is required of unskilled work." However, as noted above, the basic demands of unskilled work include the ability "to respond appropriately to supervision, coworkers, and usual work situations; and to deal

17

with changes in a routine work setting." SSR 85-15. "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base." SSR 85-15.

Ms. King found that Plaintiff had poor or no ability to accept instructions or respond appropriately to criticism from supervisors. (T at 593). She opined that Plaintiff had poor to no ability to work with or in proximity to others without being unduly distracted. (T at 592). Ms. King indicated that Plaintiff had poor to no ability to deal with normal work stress. (T at 593). Contrary to the ALJ's conclusion, these limitations certainly do impact basic work activities and bear materially on Plaintiff's ability to perform the basic work-related activities of unskilled work. Although Ms. King's assessment may have only been entitled to limited weight, it was error for the ALJ to (a) mischaracterize the assessment as not impacting basic work activities and (b) dismiss the assessment simply because Ms. King is a social worker.

In light of the foregoing, this Court finds that the ALJ's consideration of the medical record was flawed and not in accord with applicable law. As such, the ALJ's evaluation of the medical evidence cannot be sustained upon review.

### b.    RFC Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must

18

include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

If an ALJ finds that the claimant suffers from a mental impairment, "no matter how unsevere", the ALJ has the duty to take that into account when determining plaintiff's capabilities. Gray v. Astrue, 2007 WL 2874049, at *7 (S.D.N.Y.2007).  When assessing the claimant's mental RFC, the ALJ must itemize various functions contained in the broad categories. SSR 96-8p.  The functions that must be assessed are the basic work-related mental activities specified by the regulations – *e.g.* limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting-to such a degree as to reduce the claimant's ability to do past relevant work and other work. See 20 C.F.R. §§ 404.1520a(d)(3), 404.1545(c), 416.920a(d)(3), 416.945(c); see also Pabon v. Barnhart, 273 F.Supp.2d 506, 516 (S.D.N.Y.2003).

SSR 85-16 outlines the evidence the Commissioner should consider when assessing a claimant's mental RFC:

The determination of mental RFC involves the consideration of evidence, such as:

History, findings, and observations from medical sources (including psychological

19

test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psychophysiological symptoms; withdrawn or bizarre behavior; anxiety or tension.

When a case involves an individual ... who has a severe impairment(s), which does not meet or equal the criteria in the Listing of Impairments, the individual's RFC must be considered in conjunction with the individual's age, education, and work experience. While some individuals will have a significant restriction of the ability to perform some work-related activities, not all such activities will be precluded by the mental impairment. However, all limits on work-related activities resulting from the mental impairment must be described in the mental RFC assessment.

SSR 85-16. "Courts will not hesitate to reverse and remand a case where the ALJ's mental residual functional capacity assessment did not follow the mandates of SSR 85-16." Dickson v. Astrue, No. 1:06-CV-0511, 2008 WL 4287389, at *11 (N.D.N.Y. Sept. 17, 2008) (citing Schaal v. Callahan, 993 F.Supp. 85, 93 (D.Conn.1997)).

In this case, the ALJ concluded that Plaintiff retained the mental RFC to "understand, remember and perform simple tasks and some complex tasks both independently and with supervision." (T at 27).  In addition, the ALJ found that Plaintiff could "maintain attention and concentration for simple tasks, attend to a routine, maintain a schedule and was capable of making appropriate decisions." (T at 27).

The ALJ's RFC determination was based upon his evaluation of the treating source opinions.  As discussed above, that evaluation was flawed, which necessarily undermines the RFC determination.  In addition, the ALJ afforded "considerable weight" to a non-examining state agency's review physician's assessment of Plaintiff's limitations. (T at 28, 388-400).  However, such reports "are conclusory, stale, and based on an incomplete medical record, [and, as such] are not substantial evidence." Griffith v. Astrue, 08-CV-6004, 2009 WL 909630 at *9 (W.D.N.Y. July 27, 2009); see also McClean v. Astrue, 04-CV-1425,

20

2009 WL 1918397, at *4 n. 2 (E.D.N.Y. June 30, 2009).

The ALJ also cited a January 2001 consultative examination by Dr. Jeanne Shapiro, apparently believing that it supported his RFC determination. (T at 28).  To the contrary, however, Dr. Shapiro described Plaintiff as "[v]ery depressed and withdrawn." (T at 395). With respect to vocational functioning, Dr. Shapiro opined that Plaintiff would have difficulty understanding and following some directions and completing some tasks because of memory, attention, and concentration problems. (T at 396).  In Dr. Shapiro's view, Plaintiff would have trouble interacting appropriately with coworkers and supervisors and attending work and maintaining a schedule would be "difficult." (T at 396).  A low tolerance to frustration would cause "problems dealing in an appropriate manner with everyday job stress." (T at 396).  These findings clearly do not support the ALJ's RFC determination and, in fact, actually undermine it to a significant degree.

In light of the foregoing, this Court finds that the ALJ's RFC determination is not supported by substantial evidence.

### c.    Credibility

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limited effect of those symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment.  For the reasons discussed above, the ALJ's RFC assessment was flawed, which (in turn) makes his credibility determination unsustainable.

### 3.    Remand

21

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

"In other situations, where [the] Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, [the Court has] opted simply to remand for a calculation of benefits." Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999). A remand for calculation of benefits is warranted "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980); see also Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004).

Plaintiff initially applied for benefits more than ten (10) years ago. The record contains copious notes, records, and reports from Plaintiff's treating providers, consultative examiners, and State Agency review consultants. The record also contains testimony from five (5) hearings, including testimony from a vocational expert. For the reasons outlined above, this Court finds that the ALJ erred by failing to give proper weight to the credible evidence of record. Thus, given the persuasive proof of disability and the completeness of the medical record, this Court finds that a remand for further evidentiary proceedings would serve no purpose and would only further delay this matter.

Accordingly, it is recommended that a remand be ordered solely for the calculation

22

of benefits.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, that the Commissioner's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner for calculation of benefits.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   January 24, 2011

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

January 24, 2011

Victor E. Bianchini
United States Magistrate Judge

24